UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                              :
In re:  TARGET TWO ASSOCIATES,                :   OPINION AND ORDER
L.P.,                                         :
                                              :   04 Civ. 8657 (SAS)
                Debtor.                       :
                                              :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

This bankruptcy appeal arises from the inability of the appellant, 129 Front Street Associates, LLC ("Front Street"), to close on the purchase of a real property located at 129 Front Street, New York, New York (the "Property"), which was the sole asset of the debtor-appellee, Target Two Associates, L.P. ("Target Two"). The escrow agent moved for permission to transfer the appellant's entire deposit to the debtor-appellee. In an order dated July 27, 2004, the bankruptcy judge, the Honorable Cornelius Blackshear, granted the escrow agent's motion, over the appellant's objections. Contending that this order effectuates an inequitable forfeiture, Front Street now appeals the July 27th order. This Court has jurisdiction over Front Street's appeal pursuant to section 158(a)(1) of Title 28 of the United States Code.

## I.     BACKGROUND

On February 24, 2004, Target Two filed for bankruptcy under Chapter 11 of the Bankruptcy Code. In an order dated March 29, 2004, Judge

Blackshear authorized the sale of the Property in an auction to be held in his courtroom.[1] That order required bidders to deposit $1,000,000 in order to participate in the auction.[2] The order further provided that if the successful bidder failed to tender the amount of its bid, less the deposit, by a certain date, the successful bidder would forfeit its deposit:

> Upon failure by the Successful Bidder to complete the Closing on or before June 1, 2004 at 2:00 p.m. (or on or before June 30, 2004 at 2:00 p.m. if the closing date is extended in accordance with the terms of this Order), the bid deposit of the Successful Bidder, plus any Extension Fee, plus any accrued interest, shall be forfeited and shall become the property of the Debtor's Estate subject to further order of this Court.[3]

In addition, if the highest bidder defaulted, the second highest bidder was obligated to tender the amount of its own bid, less its deposit, within thirty days of receiving notice of the highest bidder's default.[4]

On April 22, 2004, the court conducted the auction, in which nine bidders participated. With a bid of $11,800,000, appellant Front Street was the highest bidder. Hang Seng Realty was the second highest bidder with a bid of

---

[1] *See In re Target Two Assocs., L.P.*, No. 04-11180 (CB), at 2 (Bankr. S.D.N.Y. Mar. 29, 2004).

[2] *See id.* at 2.

[3] *Id.* at 4.

[4] *See id.* at 4-5.

$11,750,000. Front Street's and Hang Seng Realty's deposits were placed in separate interest-bearing escrow accounts. Unable to close the purchase by June 1, 2004, Front Street applied for a thirty-day extension and paid an $88,500 extension fee, which was also placed in the escrow account, as provided for in Judge Blackshear's March 29th order.[5] In a sworn affidavit, Jeffrey Levitt, a principal of Front Street, states that Front Street made every effort to close the transaction, but was unable to secure the necessary financing.[6] On June 30, 2004, Front Street informed the escrow agent that it was unable to close. Thereupon, over Front Street's objection, Judge Blackshear directed the escrow agent to transfer the funds held in the escrow account, which by that time amounted to $1,091,382.91, to a new account for the benefit of Target Two's estate.[7] Shortly thereafter, the second highest bidder, Hang Seng Realty, purchased the Property for $11,750,000.

## II. STANDARD OF REVIEW

A district court hearing an appeal from a bankruptcy court reviews

---

[5] *See In re Target Two Assocs., L.P.*, No. 04-11180 (CB), at 1-2 (Bankr. S.D.N.Y. Jun. 2, 2004).

[6] *See* 7/21/04 Affidavit of Jeffrey Levitt ¶¶ 6-11, 14-18.

[7] *See In re Target Two Assocs., L.P.*, No. 04-11180 (CB), at 1 (Bankr. S.D.N.Y. Jul. 27, 2004).

that court's findings of fact under a "clearly erroneous" standard and its conclusions of law *de novo*.[8]

## III. DISCUSSION

Front Street contends that it should only be liable for actual damages stemming from its default. Given the fact that the second highest bidder, Hang Seng Realty, purchased the Property for only $50,000 less than Front Street's bid, it is likely that Target Two's loss is considerably smaller than Front Street's deposit — even taking into account extra costs and legal fees incurred by the bankruptcy estate as a result of the delay in closing the sale of the Property.[9] Furthermore, according to Front Street, the actual damages are readily ascertainable. Consequently, Front Street argues that the bankruptcy court erred in

---

[8] *See* Fed. R. Bankr. P. 8013; *In re First Central Financial Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990).

[9] Front Street concedes that the $88,500 extension fee should not be refunded. *See* Brief of Appellant 129 Front Street Associates, LLC ("Front Street Br."), at 11. In its submissions to this Court, Front Street has provided an estimate of what it considers to have been the actual and consequential damages sustained by the bankruptcy estate as a result of Front Street's default. *See id.* at 8-11. "[G]iving the Estate of the Debtor every benefit of the doubt and the benefit of every possible calculation," Front Street's calculation of damages (excluding the non-refundable extension fee) amounts to $145,640.80. *Id.* at 11. Thus, according to Front Street, the $1 million forfeiture resulted in a windfall to Target Two's bankruptcy estate of $854,359.20. *See id.*

ordering the entire deposit transferred to the bankruptcy estate. Whether the bankruptcy court could require Front Street to forfeit its entire deposit is a question of law, and accordingly this Court will review Judge Blackshear's determination *de novo*.

Congress has authorized the federal judiciary to exercise discretion in setting the terms and conditions for judicial sales of real property. Section 2001(a) of Title 28 of the United States Code provides in part: "[a]ny realty or interest therein sold under any order or decree of any court of the United States shall be sold . . . upon such terms and conditions as the court directs." By virtue of its authority to set the rules of a judicial sale, a bankruptcy court may provide for the forfeiture of a purchaser's deposit upon default, provided that the court explicitly indicates the conditions of forfeiture so as to provide adequate notice to potential bidders.[10] In this case, the bankruptcy court set the terms and conditions for the sale of the Property in the March 29th order, which unambiguously provided that the successful bidder would forfeit its entire deposit if it failed to close prior to a date specified in the order. In addition, it is undisputed that Front Street, which

---

[10] *See In re Crown Corp.*, 679 F.2d 774, 777 (9th Cir. 1982); *United States v. Branch Coal Corp.*, 390 F.2d 7, 10 (3rd Cir. 1968). *See also In re Governor's Island*, 45 B.R. 247, 256-58 (Bankr. E.D.N.C. 1984) (enforcing a liquidated damages clause in an agreement between the parties to a bankruptcy sale that provided for the forfeiture of the purchaser's deposit upon default).

was represented by counsel, had notice of the terms, including the forfeiture provision, governing the sale of the Property.

Front Street fails to identify any precedent for its contention that a bankruptcy court does not have the power to require a delinquent purchaser to forfeit its deposit. According to Front Street, a bankruptcy court may only require the bidder to pay the stipulated price — *i.e.*, specific performance — or the deficiency resulting from a resale — *i.e.*, actual damages. The cases cited by Front Street do not support this proposition, however. For instance, in *In re Rival Knitting Co.*,[11] the Second Circuit held that a defaulting purchaser in a bankruptcy sale was liable for the difference between its bid and the resale price, which in that case *exceeded* the purchaser's deposit. However, that court was not presented with, and did not address, the question of whether a defaulting purchaser could be required to forfeit its deposit when such a forfeiture is not required to make the debtor whole. Similarly, in *In re Dallek Bros., Inc.*,[12] also cited by Front Street, a defaulting purchaser was ordered to pay $429.97, the difference between its bid and the resale price, which again exceeded the deposit. Both of the cases relied upon by Front Street merely stand for the proposition that a purchaser may be held

---

[11] 289 F. 960 (2d Cir. 1923).

[12] 8 F. Supp 610 (S.D.N.Y. 1934).

liable for the deficiency resulting from its default; neither case suggests that a bankruptcy court cannot set the terms of a judicial sale to provide for the forfeiture of a deposit.

In the alternative, Front Street argues that the bankruptcy judge should have applied New York law regarding the forfeiture of deposits. Even assuming that state law is applicable, however, it is well established in New York that "a vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment."[13] Because Front Street's inability to obtain the necessary financing does not constitute a lawful excuse, it follows that Front Street has no right under New York law to recover its deposit.

Front Street maintains that under the law governing foreclosure sales in New York — which it believes to be analogous to judicial sales conducted by bankruptcy courts — a defaulting purchaser's liability cannot exceed the difference between its bid and the amount obtained at resale. Once again, the cases cited by Front Street do not support this proposition. For instance, in *Federal Nat'l Mortgage Assoc. v. Walsh*,[14] the defaulting purchaser's liability was

---

[13] *Cipriano v. Glen Cove Lodge #1458*, 1 N.Y.3d 53, 62 (2003) (citing *Maxton Builders, Inc. v. Lo Galbo*, 68 N.Y.2d 373, 378 (1986)).

[14] 686 N.Y.S.2d 811 (2d Dep't 1999).

limited to the deficiency plus the expenses occurring on resale for the simple reason that the terms of the public auction so provided.[15] In other mortgage foreclosure cases, however, New York courts have ordered the forfeiture of a defaulting purchaser's deposit where the terms of sale executed by the court expressly provided that the deposit constitutes liquidated damages in the event of default.[16] Thus, while under New York law a court overseeing a foreclosure sale *may* limit damages to the deficiency resulting from resale plus any expenses connected thereto, there is no principle of New York state law that *requires* a court to limit a defaulting purchaser's liability in this manner.

Finally, Front Street contends that the forfeiture is a penalty that is disfavored under principles of equity. Front Street relies on *Lange v. Farmers*

---

[15] *See id.* at 812. In addition, Front Street misstates the holding of *Bertino v. Kalmanash*, 463 N.Y.S.2d 44 (2d Dep't 1983). In that case, the appellate court did not order the return of the defaulting bidder's deposit, as Front Street claims, but rather held that it was *error* for the lower court to have done so. Under the terms of the foreclosure sale set by the lower court, the defaulting bidder was liable for any deficiency resulting from resale, which in fact exceeded the deposit. *See id.* Consequently, the appellate court held that the bidder was not entitled to the return of its deposit. *See id.* at 45.

[16] *See NYCTL 1996-1 Trust & The Bank of New York v. Viola*, No. 7452-99, 2003 WL 22174414, at *3 (Sup. Ct. Kings Co. Sept. 4, 2003); *Regency Sav. Bank. v. Terry-Ross Assocs.*, No. 07653-01, 2002 WL 31549082, at *1 (Sup. Ct. Queens Co. Sept. 30, 2002).

*Fed'n Coop., Inc.*,[17] in which the District Court for the Western District of North Carolina drew on equitable principles articulated by the courts of North Carolina in holding that a bankruptcy referee erred in allowing the bankruptcy estate to retain the entire deposit of a defaulting purchaser. Front Street's reliance on *Lange* is somewhat misplaced given that decision's dependence on principles of equity as articulated by the courts of North Carolina, whereas the highest state court in this jurisdiction, the New York Court of Appeals, has insisted repeatedly that, notwithstanding equitable principles, a defaulting purchaser generally has no right to recoup its deposit.[18] At any rate, local law does not control a bankruptcy court's application of equitable principles. The Second Circuit has held that, in non-diversity cases, "if a form of relief exists within the ambit of the federal court's historic equity jurisdiction, it should be available without reference to the peculiar requirements of local law. . . . 'Whether equitable relief should be granted and to what extent in federal matters is a matter properly within the domain of federal equity jurisprudence.'"[19]

---

[17]   249 F. Supp. 544 (W.D.N.C. 1966).

[18]   *See Maxton Builders*, 68 N.Y.2d at 381-82.

[19]   *Fielding v. Allen*, 181 F.2d 163, 168 (2d Cir. 1950) (quoting 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 2.09 (2d ed.)).

Consequently, Front Street's argument sounding in equity should not be lightly dismissed. It is axiomatic that equity abhors a forfeiture and will, likewise, avoid an unjust windfall.[20] It appears that enforcing the forfeiture provision — given the fact that Hang Seng Realty closed on the Property for a mere $50,000 less than Front Street's bid — will result in a substantial windfall to Target Two's bankruptcy estate. Indeed, Front Street estimates that, taking into account costs associated with the delay in closing caused by its default, this windfall amounts to $854,359.20.[21] Applying principles of equity in this instance is complicated somewhat by the fact that the forfeiture resulted from terms of sale set forth in a court order. While the forfeiture provision itself was a valid condition of the bankruptcy sale at the time when the March 29th order was issued, enforcing that provision when it was clear that doing so would create a substantial windfall for the debtor's estate is problematic.

In its July 27th order transferring the entire deposit to Target Two's

---

[20] *See, e.g., C.K. Smith & Co. v. Motiva Enters. LLC*, 269 F.3d 70, 77 (1st Cir. 2001); *Prudential Ins. Co. of Am. v. S.S. Am. Lancer*, 870 F.2d 867, 871 (2d Cir. 1989) ("[E]quity, we believe, abhors a windfall.").

[21] *See* Front Street Br. at 11. This Court notes, however, that there has been no finding of fact as to the extent of the actual damages to Target Two's bankruptcy estate.

estate, the bankruptcy court did not explicitly address the windfall issue.[22] The lack of any explanation as to why principles of equity do not warrant a refund of some portion of Front Street's deposit prevents meaningful appellate review.[23] Therefore, this Court orders that the escrow agent's motion be remanded to the bankruptcy court. On remand, the bankruptcy court should supplement the record with a statement as to its consideration of the argument, based on equitable principles, that it should refund some portion of the deposit.

## IV. CONCLUSION

For the foregoing reasons, the case is remanded to the bankruptcy court for a supplementation of the record. This Court will retain jurisdiction to hear the appeal once the supplemental findings have been made.

---

[22] The bankruptcy court's July 27th order states: "this Court has received and considered the opposition of 129 Front Street Associates, LLC, and overrules said objection." *In re Target Two Assocs., L.P.*, No. 04-11180 (CB), at 1 (Bankr. S.D.N.Y. Jul. 27, 2004).

[23] *Cf. Rudenko v. Costello*, 322 F.3d 168, 170 (2d Cir. 2003) (holding that the district court's failure to identify grounds on which habeas corpus petitions were denied prevents "meaningful appellate review" and, therefore, warrants remand); *Fort Knox Music, Inc. v. Baptiste*, 203 F.3d 193, 197 (2d Cir. 2000) (remanding to district court because the record did not reveal the grounds for the district court's rejection of the defendant's jurisdictional challenge).

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
May 16, 2005

## - Appearances -

**For Appellant:**

Sanford Solny, Esq.
Law Office of Sanford Solny
150 Broadway, Suite 1600
New York, New York 10038
(212) 359-3090


**For Appellee-Debtor:**

Nicholas Fitzgerald, Esq.
Nicholas Fitzgerald and Associates
277 Broadway, Suite 1200
New York, New York 10007
(800) 828-7763